## Butler's Estate.

*Wills—Last extremity—Signature—Failure to ask another to sign—Act of April 8, 1833, P. L. 249.*

Where a paper prepared as a will is read to a person in his last illness, who expresses his approval of it, but is prevented from signing it by reason of his exhausted condition brought on by his wife's hysterical conduct, although he is still capable of asking another to sign for him, but fails to do so, the paper cannot be admitted to probate as a will.

Argued Oct. 29, 1908. Appeal, No. 190, Oct. T., 1908, by Frank Butler, from decree of O. C. Allegheny Co., March T., 1908, No. 197, dismissing appeal from Register of Wills in Estate of Ralph Butler, deceased. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Petition from decision of register of wills refusing to admit a paper writing as a last will and testament.

HAWKINS, P. J., filed the following opinion:

The questions raised in this matter grow out of objections made, (1) to testamentary capacity; and (2) to the competency of parol proof of an unsigned will.

The facts are these:

Ralph Butler was married twice. He had one son by his first wife, but although after the birth of this son he was divorced from his wife, he continued to maintain them during his life. About sixteen years ago he again married. In August, 1907, while in failing health and contemplation of going to a sanitarium, he made a will in which he substantially gave his whole estate to his then wife, stating at the time, however, that this was merely a "peacemaker," and that he intended to have another drawn in which he would take care of his son. The will so executed seems to have passed into Mrs. Butler's hands and remained there until offered for probate. In the latter part of October following, Mr. Butler returned from the sanitarium in much worse health, and was confined to his room until he died, November 9. In the meantime he was often delirious and confused, but had lucid intervals. In one of these lucid intervals he gave instructions for the drawing of a will. The first draft proving unsatisfactory a second was prepared, embodying his suggestion that his wife should have sixty, and his son forty per cent of the income during her life, and the principal go to his son at her death. Before this latter was presented the attending physician on being asked if Mr. Butler was capable of making a will replied that if caught in a lucid interval he "could talk business." Accordingly about 4:30 o'clock in the afternoon of November 6, Mr. Wisner, an intimate personal and business friend, took the will which had been drawn to Mr. Butler's room and finding him conscious, read it carefully to him in presence of Mrs. Butler and others, and at the conclusion of the reading, when asked if that was what he wanted, answered, "Yes, this is as I want it to be." In the meantime when Mrs. Butler understood the proposed disposition she became hysterical, begged Mr. Butler on her knees not to make this will, cried, threw herself on the bed and moaned, ran out and in the room. To this appeal Mr. Butler replied among other things: "You have been nagging me for the last fifteen years, ever since my marriage, to put all my property in your hands; I told you I would not, and I don't intend to." This ordeal lasted until after six o'clock—more than an hour and a half— and when Mr. Wisner asked Mr. Butler to sign the will the reply

was "No," he was too "tired and exhausted; let it go until tomorrow." Mr. Butler's mind was clear during the whole of this ordeal; but he was in an unusually weak and nervous condition in consequence of it. His hand was trembling so that it was thought he could not have made a legible signature. He had been delirious in the forenoon when the doctor made his call, and was again delirious at eight o'clock, and so far as appears had no lucid intervals afterward.

The court finds from the evidence:

1. That Mr. Butler was mentally competent when the writing propounded here as his will was submitted to him;

2. That this writing expresses his final testamentary intent; but

3. That he was prevented from signing it by reason of his exhausted condition brought on by his wife's hysterical conduct; but was capable of asking another to sign for him.

Prior to the passage of the act of April 8, 1833, wills in writing proved by two or more witnesses, although unsigned by testators, were sufficient to pass real and personal estate: 2 Rhone, 491. The act of 1833 changed this so far as to make signature necessary unless testator was prevented by the extremity of last sickness from signing. The writing propounded here can be sustained, if at all, only by bringing it within this qualification of the statutory prescription. The question then is whether or not Mr. Butler was prevented by the extremity of his last illness from signing? The statutory methods of signing may be personally or by the hand of another; and under the authorities the extremity must be such as to prevent the exercise of either of these methods. "If," said the court in Stricker v. Groves, 5 Whart. 386, "being personally unable to sign and having time and opportunity to ask another to do so, testator fails to do it, the will fails." So in Ruoff's App., 26 Pa. 219, the excuse was that the alleged testator was prevented from signing by the extremity of his last sickness and so were the proofs; but the court found that he had his senses and conversed about the will more than would have been necessary to ask someone to sign for him. So in Plate's Est., 148 Pa. 55, where the testator started to write his signature but stopped,

saying, "I can't sign it now," the court held this did not excuse him from asking another to do so. No doubt as was said in Aurand v. Wilt, 9 Pa. 54, testator is entitled to a reasonable time within which to sign and if prevented before the end of that time the case falls within the saving clause, as did the case of Showers v. Showers, 27 Pa. 485; but Mr. Butler's condition made it essential that he should have called on another to act for him. Even the interference of his wife might not have prevented this. The postponement was unreasonable. It was known that delirium or death were imminent. Even if he should have another lucid interval he might change his mind as to the manner of disposition of his estate. The evidence shows that while he was unable to sign personally, he was not in such an extremity as to prevent him from calling on another to sign for him. It follows under the authorities that the writing propounded must fail as a will. He could not sign, but could request and did not: Ruoff's App., 26 Pa. 219.

The court entered a decree dismissing the appeal from the register of wills.

*Error assigned* was decree dismissing appeal from register of wills.

*A. B. Reid* and *M. J. Hosack*, of *Hosack, Knox & Hosack*, with them *A. V. D. Watterson*, for appellant.—The will dated November, 1907, was executed and proved in conformity with sec. 6 of the statute of wills, approved April 8, 1833, P. L. 249; Showers v. Showers, 27 Pa. 485; Aurand v. Wilt, 9 Pa. 54.

*Samuel McClay*, with him *Wm. A. Seifert* and *Reed, Smith, Shaw & Beal*, for appellees, cited: Ruoff's App., 26 Pa. 219; Stricker v. Groves, 5 Whart. 385; Plate's Est., 148 Pa. 55.

PER CURIAM, January 4, 1909:

The decree is affirmed at the cost of the appellant on the opinion of the learned president judge of the orphans' court.