# Munhall's Estate.

*Wills—Nuncupation.*

Probate of an alleged nuncupative will will be refused, where it appears conclusively, from what decedent said at the time the alleged instructions were given and three hours later when it was suggested to him that he sign a paper which had been prepared outlining the instructions, that he was mentally competent to have asked another to sign for him any testamentary paper.

Argued Oct. 20, 1911.  Appeal, No. 146, Oct. T., 1911, by Teresa M. Kiefer, from decree of O. C. Allegheny Co., May T., 1910, No. 210, vacating decision of Register granting probate in Estate of Robert J. Munhall.  Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.  Affirmed.

Appeal from decision of register of wills.

HAWKINS, P. J., filed the following opinion:

The question here is of nuncupation.  The facts are these:

Mr. Munhall became suddenly ill on December 9, 1908; on the fourteenth an operation for appendicitis was performed, and for a day the symptoms seemed encouraging; but there was a relapse on the fifteenth, and he was taken to the Mercy Hospital, where a second operation was performed; and when he found that his recovery was hopeless he called his two brothers, William and Charles, to his bedside (priest, doctor and attendants having left the room), and gave these instructions:

"Will, I want you to settle up all my affairs; I want you to close out the business just as quickly as possible; sell it as a whole if you can; if not, do the best you can, and use your best judgment without sacrificing too much.  The Carson street yards you can lease; the other lease you ought to be able to make some money out of.  Settle up father's estate.  I have six or seven thousand dollars on

deposit in the banks, and if you need more you can make a loan on some South Side Trust stock. You will find a list of my notes and papers in the safe. You can check them all up; I think you will find everything correct. Give Marie, Catherine and Herbert [his sister and brother] $1,500.00 each. I don't want Stella to handle any of my money; I want you and Charles to hold it in trust for her and use it for her as you think best. I want to give at least $1,000.00 to charity; $250.00 to the Hospital, the sisters have been very kind to me; $250.00 to St. Paul's Orphan Asylum; $250.00 to the Little Sisters of the Poor, Allegheny, and the balance you can select whatever charity you wish. Have plenty of masses said for me. Pay all my just debts and divide the balance among the four of you."

Toward the end of this recital Robert, having been asked "if he had made a will," said, "No." "He seemed," said the witness, "to have his mind made up as to just what he wanted to go through with, and he went through with it to the end." After this witness left the room, he concluded on consultation with his uncle to have these instructions of Robert put in writing, and this was accordingly done by an attorney at his dictation. When, returning to the sick room about three hours after the former interview, he told Robert that he had "a paper here outlining the statements you made," and the reply was, "No, Will, I have told you everything I wanted; I have nothing further to add." Miss Vogel, the nurse's recollection of the reply was this: "No, Will, I have told you everything in the presence of Charles; now let that do; I must have some sleep; I haven't had any sleep for three nights." Robert died six or seven hours afterwards. Attending physicians gave the opinion based on their observation that from one hour after Robert had given the instructions to his brother Will, he was unfit physically and mentally to have made a will; but the evidence of what Robert said at the time the alleged instructions were given and three hours later, when Will suggested he

sign the paper outlining his instructions, which had been prepared, show conclusively that he was mentally competent to have asked another to sign for him any testamentary paper. He had then an intelligent comprehension of what he had previously done, and what he would not do. He had given his instructions and would do no more. His refusal to sign must end the matter. His purpose had been accomplished.

This case falls within the principle of Butler's Est., 223 Pa. 252. Assuming that Mr. Munhall was physically too weak himself to sign, the evidence leaves no room for doubt of his ability to ask another to do so for him. The extremity which validates nuncupation is therefore lacking, and the decree of the register granting probate must be set aside.

And now to wit, December 19, 1910, this matter came on to be heard upon appeal from the decision of the register of wills in admitting to probate a certain paper reduced to writing, purporting to be a nuncupative will of said decedent, and answer thereto, and testimony taken before the register, having been offered in evidence with same force and effect as if the same had been taken before the court and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed that the appeal be sustained and decision of the register granting probate is hereby vacated and set aside.

*Error assigned* among others was the decree of the court.

*James R. Sterrett,* of *Patterson, Sterrett & Acheson,* for appellant, cited: Wiley's Est., 187 Pa. 82.

*E. L. Kearns,* for appellees, cited: Rutt's Est., 200 Pa. 549; Megargy's Est., 25 Pa. Superior Ct. 243; Taylor's App., 47 Pa. 31; Porter's App., 10 Pa. 254; Wiley's Est., 187 Pa. 82; Ruoff's App., 26 Pa. 219.

PER CURIAM, January 2, 1912:

The decree is affirmed on the opinion of the learned president judge of the orphans' court.